FLORENCE LEMPER, Appellee, v. CITY OF DUBUQUE, Appellant.

No. 46885.

OCTOBER 15, 1946.

John J. Kintzinger, of Dubuque, for appellant.

Czizek & Czizek, of Dubuque, for appellee.

BLISS, J.—There is no controversy about the facts. They are, in substance, as we here state them. Plaintiff was the duly appointed and qualified police matron of defendant and performed all of the duties of said office from August 1, 1940, to May 31, 1945. Prior to and during said period section 5667, Code, 1939 (section 363.41, Code, 1946), was in effect and provided as follows:

"Compensation of matrons. Police matrons shall receive not less in any case than the minimum salary paid to policemen in the city in which they are appointed."

During said period the defendant failed and refused to comply with said statute and paid her as compensation a total sum which was $1,660 less than the amount to which she was entitled under the statute. She therefore asked judgment against defendant for that sum, with yearly interest at five per cent.

In Division I of the substituted answer defendant admitted the payment of compensation to plaintiff as alleged in her petition, and admitted that the minimum salary paid to policemen during said period was as so alleged. In paragraph 2 of Division II of said answer defendant alleged, in substance,. that: From 1931 to 1945 plaintiff was a police matron of the city; in August of each of said years it prepared a "budget estimate of expenditures and proposed tax levy" for the following fiscal year, as required by statute, which budget was then, by resolution, adopted by the city council and placed on file with the city clerk; a time and place were fixed for a

hearing thereon and notice thereof was published as required by statute so that anyone so desiring might make objections to all or any part of the budget; no objections were made in any of said years by the plaintiff or by anyone else; thereafter the mayor and clerk each year certified said budget estimate and proposed tax levy, together with proof of notices and hearings to the county auditor, who each year levied taxes in accordance therewith; the said annual budget contained an itemized list of all expenditures for the year covered, among which was the amount to be expended for police matrons; in March of each of said years the city council prepared, adopted, and filed a "detailed distribution of expenditures for the following fiscal year" with the city clerk, and a time and place were, each year, fixed for hearing thereon, and notice thereof was published so that objections might be made; none was ever made by plaintiff or anyone else; at said annual hearing the said detailed distribution of proposed expenditures was considered, approved, and adopted by an ordinance which appropriated from the revenue and funds of the defendant money for the payment of the expenditures of the government of the defendant in the amounts and for the purposes noted in said detailed distribution, among which was the specific amount set apart for compensating the police matron; the amount of said compensation for each of said years was lower than tha, paid to the lowest-paid policeman, and no objection was made thereto at any time by the plaintiff but instead it was voluntarily ratified and acquiesced in by her; plaintiff signed the pay-roll record of defendant semimonthly for her salary as so fixed, and upon signing said pay roll she accepted the defendant's warrant, received the money thereon, appropriated the money to her own use and benefit, and paid into the police pension fund of the defendant one per cent of the money so received; and "the plaintiff, by her own acts and conduct waived any and all rights she had or now claims to have had for additional salary and is thus now estopped from having any lawful claim against the City of Dubuque for alleged additional salary."

Plaintiff's motion to strike paragraph 2 of Division II set out above was based upon these grounds: First, plain-

tiff, admittedly having been a police matron of defendant, she could not accept nor could the defendant pay a salary to her in a lesser amount than that provided by section 5667, Code, 1939 (section 363.41, Code, 1946); second, the matters alleged in the challenged pleading do not constitute a waiver or estoppel to claim or recover the unpaid portion of her statutory salary; third, since the payment of the statutory salary by the defendant and its acceptance by plaintiff were required by statute, no agreement to or acceptance of a less salary by plaintiff constituted a waiver or estoppel precluding her from recovering any unpaid balance of the statutory salary.

The trial court ably reviewed the pertinent authorities bearing upon the questions involved and sustained the motion to strike.

We are abidingly convinced that this decision is right.

I. There was no error in striking the allegations of the answer that were challenged by the motion, and no prejudice to the defendant in so doing, for the reason that the allegations stricken stated no defense to the plaintiff's pleaded cause of action. The only matters alleged to be defensive that were stricken from the pleading were that plaintiff had waived any right of recovery and had estopped herself from asserting such right. There was no allegation that she had voluntarily donated the unpaid portion of her statutory salary to the defendant or that it could not be paid because of any economic depression, financial difficulties, or lack of funds. The stricken allegations stated only that defendant paid her less than the statutory salary; that she made no protest or objection to this, but signed the pay roll every two weeks, accepted the warrants issued to her, endorsed them, and received the amounts stated therein. There was no allegation of damage or injury suffered by the defendant. The allegations with respect to the annual budget, estimate of expenditures, and proposed tax levy, in listing the expenditure for police matrons mentioned only the amount actually paid and not the salary required by statute. No damage was thereby alleged nor could any be reasonably inferred as resulting. Under the statute providing for the compensation of police matrons the amount of that expenditure

was definitely fixed. It was to be not less than the minimum salary paid to any policeman. The amount in fact paid was less than such salary. The budget of estimated expenditures and the taxes levied were less by the amount of the deficiency in the payments made to plaintiff. But the defendant suffered no injury and was put to no disadvantage or inconvenience thereby.

The defendant did not change its position or status or do anything to its detriment in reliance upon any word or act of the plaintiff. It knew the law and the provisions of the said statute, or it must be presumed that it did. And it therefore knew that its monetary obligation and the amount thereof were fixed by the statute and not by the alleged conduct of the plaintiff. The alleged defense of estoppel was wholly without merit.

The case of Montague's Adm'r v. Massey, 76 Va. 307, 314, was very like this one. A like recovery was sought. Defendant alleged estoppel. The court, in holding that such defense did not lie, said:

"The doctrine of estoppel cannot be applied to this case. Estoppel must be reciprocal and mutual, and is founded upon the idea that the acts of the party estopped must result in injury to the other party, and generally that it would be a fraud if the right asserted be maintained. * * * No such question can arise between the State and a citizen claiming money due from the State for services rendered."

As said in Aetna Life Ins. Co. v. Kepler, 8 Cir., Neb., 116 F. 2d 1, 7:

"One of the essentials of an equitable estoppel is a false representation made by the word or by the act of the person sought to be estopped * * *. Another essential is that the party to whom the representation was made relied and acted upon the representation to his prejudice."

The City of Dubuque and its officials were not misled in any way to the prejudice of the city by any misrepresentation or act of the plaintiff. They were as cognizant, and perhaps more so, of their statutory obligation, as she.

In Holcomb v. Boynton, 151 Ill. 294, 300, 37 N. E. 1031, 1033, in which the defense of estoppel was pleaded, the court said:

"If both parties are equally cognizant of the facts, and one has acted under a mistaken idea of the law, the other party cannot say he has been deceived thereby, and is entitled to an application of the rule, but will be considered as having acted upon his own judgment solely."

Salley v. McCoy, 182 S. C. 249, 276, 189 S. E. 196, 208, was a case of the same kind as this. The defense of estoppel was raised. In answering this contention, the court said:

"The facts alleged to constitute estoppel are simply that plaintiff, from 1931 to the time of the commencement of this action accepted without protest the compensation provided for him in the county supply acts, and that defendants acted and relied on his conduct. I see nothing here to estop plaintiff. He had no peculiar knowledge of the circumstances. The special enactments were open to the inspection of all. If the defendants 'acted and relied' on plaintiff's conduct they had no authority for so doing. The county board is charged with the administration of certain phases of the law. The special acts were binding upon it (the county board), during the period referred to in this defense. It was upon these that the board 'acted and relied'."

Equitable estoppel is always, in fact, bottomed on fraud, actual or constructive. McCloud v. Bates, 220 Iowa 252, 261 N. W. 766. By no reasonable construction could any fraud or element thereof be inferred from the alleged conduct of the plaintiff upon which defendant based its defense of estoppel.

The allegations of Division II of the answer, respecting the hearings upon the annual budgets and the fact that the plaintiff never appeared at any hearing and made any objection to the amount of the expenditure for the office of police matron and thereby estopped herself, require little consideration. The contention is without merit. These hearings were for the benefit of the *taxpayers* of the defendant. Section 375 of the 1939 Code (section 24.9, Code, 1946) provided for the

notice and hearing on the "budget estimate of expenditures and proposed tax levy." Section 377 (section 24.11, Code, 1946) stated who might object to the budget or any part of it, as follows:

"The certifying board or the levying board, as the case may be, shall meet at the time and place designated in said notice, *at which meeting any person who would be subject to such tax levy,* shall be heard in favor of or against the same or any part thereof." (Italics supplied.)

Section 6670 of the 1939 Code (section 419.56, Code, 1946) prescribed the procedure of the March meetings on the "detailed distribution of expenditures," as follows:

"The budget so submitted to the council shall be taken up by it in open meeting, and full opportunity shall be given for hearing any objections or protests which *any taxpayer* of the city or town may desire to make to any item or items in such budget, or to any omissions therefrom." (Italics supplied.)

The plaintiff's failure to protest has not precluded her from maintaining this action.

II. Another ground of plaintiff's motion was that any agreement or arrangement between herself and the city, whether express or implied, by which she was paid and accepted less than the statutory salary was contrary to public policy and void, since it was a violation of a mandatory statute fixing the amount of the salary of a police matron, and the fact that she did accept a less amount was in no way a bar to the recovery by her of the difference between the amount paid her and the amount legally due her under the statute.

There is no question that the great weight of authority and precedent sustains this contention of the plaintiff. Whenever this court has expressed itself in cases like this one, or kindred thereto, whether by decision or dictum, it has uniformly noted its adherence to the above-stated rule and principle of law. In Du Bois v. City of Oskaloosa, 229 Iowa 109, 111–113, 294 N. W. 302, 303, we said:

"This court has repeatedly recognized that the amount of compensation and the time or times for payment thereof for a public officer are not determined from the contract of employment but solely from the legislative provisions applicable to the payment of such compensation. [Citing decisions.] * * * We have held that a contract, which contemplates the payment of more salary than that specified by law, is against public policy. Dodson v. McCurnin, 178 Iowa 1211, 160 N. W. 927, L. R. A. 1917C, 1084. We have also held that a contract, which contemplates the payment of less salary than the law specifies, is likewise contrary to public policy. Bodenhofer v. Hogan, 142 Iowa 321, 120 N. W. 659, 134 Am. St. Rep. 418, 19 Ann. Cas. 1073. In the case of Johnson County Sav. Bank v. Creston, 212 Iowa 929, 933, 231 N. W. 705, 707, 84 A. L. R. 926, we state: 'It is a general principle that a municipal contract entered into in violation of a mandatory statute, or a contract in opposition to public policy is not merely voidable but void (Coggeshall v. Des Moines, 78 Iowa 235) * * *.'"

See, also, Hawkeye Ins. Co. v. Brainard, 72 Iowa 130, 132, 133, 33 N. W. 603; Gilman & Cowdrey v. Des Moines Valley R. Co., 40 Iowa 200, 203–205; Purdy v. City of Independence, 75 Iowa 356, 39 N. W. 641; Peters v. City of Davenport, 104 Iowa 625, 628, 630, 74 N. W. 6; Daniels v. City of Des Moines, 108 Iowa 484–487, 79 N. W. 269; Dodson v. McCurnin, 178 Iowa 1211–1230, 160 N. W. 927, L. R. A. 1917C, 1084; Bodenhofer v. Hogan, 142 Iowa 321–328, 120 N. W. 659, 134 Am. St. Rep. 418, 19 Ann. Cas. 1073; Dillon & Palmer v. Allen, 46 Iowa 299, 300, 26 Am. Rep. 145; Ryce v. City of Osage, 88 Iowa 558, 562, 563, 55 N. W. 532.

In 22 R. C. L. 538, section 235, is the statement:

"As a general rule an agreement by a public officer to render the services required of him for less than the compensation provided by law is void as against public policy."

Under a like headnote to an annotation following Werner v. Hillman Coke & Coal Co., 300 Pa. 256, 150 A. 471, 70 A. L. R. 967, 971 et seq., decisions supporting the note from twenty-one jurisdictions are listed and commented on. The

reasons back of the rule are thus stated in Crutcher v. Johnson County, Tex. Civ. App., 79 S. W. 2d 932, 933:

"It is to be presumed that the Legislature, in fixing the salary to be paid to those who filled the various public offices of this state, did so with due regard to the nature of the service and the character of the individual needed to fill the office, and the type of officer that could be obtained for the salary offered. If a candidate for public office is permitted to obtain appointment or election by a promise to serve for less than the amount fixed by the Legislature, or if, after having obtained appointment or election, he is permitted to more securely entrench himself in office by such a promise and thus bring about his appointment or re-election, such practice will ultimately result in the virtual auctioning off of official positions to the lowest bidder, and the obtaining of the least efficient employees to fill the positions. Those capable of earning the salary fixed by the statute, and of the type contemplated by the Legislature, will be eliminated by such competitive bidding, so that none but the inefficient will be available for selection to fill the offices. Official morality and public policy alike prohibit the undermining of the public service by permitting officers to thus make merchandise of their official services."

In Daniels v. City of Des Moines, supra, 108 Iowa 484, 487, 79 N. W. 269, 270, plaintiff, acting temporarily as police matron, sued to recover the difference between the salary she received and that provided by Code section 5667. Under the facts it was found that she had not been appointed to the office of police matron but was named only as a temporary fill-in and not under the statute. She was denied recovery. But this court said:

"* * * if plaintiff was appointed police matron, then, as the statute fixed her compensation, a contract whereby she agreed to accept less than the amount fixed by statute would be contrary to public policy and void."

In Bodenhofer v. Hogan, supra, 142 Iowa 321, 328, 120 N. W. 659, 662, 134 Am. St. Rep. 418, 19 Ann. Cas. 1073, a

deputy sheriff accepted less compensation than the statute required. In permitting recovery against the sheriff, we said:

"An agreement to release a debtor on part payment of the amount acknowledged to be due as between them, without other consideration for such release, is not binding. * * * And with direct reference to such a situation as is now before us it has been held that one who is entitled to a statutory compensation can not estop himself by receiving a less amount in full compensation from afterwards insisting on full payment."

In an annotation on this subject in 118 A. L. R. 1458 et seq., supplementary to the annotation in 70 A. L. R. 973, many additional decisions are noted supporting the ruling of the trial court which is challenged on this appeal. We will not make further notation of them. Other later like decisions are: Allen v. City of Lawrence, 318 Mass. 210, 61 N. E. 2d 133, 160 A. L. R. 486; Jones v. City of Scranton, Pa. Com. Pl., 46 Lack. Jur. 165; Watson v. Lee County, 224 N. C. 508, 31 S. E. 2d 535; Fisher v. Lane, 174 Or. 438, 149 P. 2d 562; Hansen v. Cheyenne County, 139 Neb. 484, 297 N. W. 902; Jefferson County v. Case, 244 Ala. 56, 12 So. 2d 343; Reed v. Jackson County, 346 Mo. 720, 142 S. W. 2d 862; State ex rel. Perkins v. Lee, 142 Fla. 154, 194 So. 315; Schwarz v. City of Philadelphia, 337 Pa. 500, 12 A. 2d 294.

The defendant does not seriously contend that the authorities generally do not support the ruling of the trial court. It cites but two decisions in its printed brief and argument on this appeal. Its chief reliance is our decision in Glaser v. City of Burlington, 231 Iowa 670, 1 N. W. 2d 709. The decision does not aid the defendant. It is a sound decision but it is bottomed upon a record and facts far different from those in the case before us. The defendant city and the firemen were confronted with a serious economic emergency. The city was in financial straits. It was necessary, in the public interest and for the protection of the property and lives of the citizens, that the fire department be fully manned. But this could not be done if the salaries of its members were to

be maintained at the level at which they had been paid. It was necessary to reduce the number of firemen or the pay roll. The firemen realized that retrenchment was necessary and requested and acquiesced therein. The authorities cited in the opinion fully sustain the decision. As stated in 2 McQuillin on Municipal Corporations, Second Ed., section 542, it has been frequently held that an agreement by a public officer or employee, in times of financial depressions or economic emergencies, to accept a reduction in compensation is not against public policy and does not bar a recovery of the amount so deducted. In Bishop v. City of Omaha, 130 Neb. 162, 167, 264 N. W. 447, 450, there were two causes of action tried and submitted on appeal. Of the first one the court said:

"There is no question but what the city council of Omaha had the power to suspend any member of the fire department for economic reasons, and that it was clearly within the right of the city, when the council had good reason to believe the funds * * * would be exhausted in 1932, to suspend each fireman for three days each month."

Whatever is essential to the public welfare, of course, cannot be against public policy. Whatever is inimical to public welfare is against public policy. The reduction in the salary of the plaintiff herein was not due to any economic or financial difficulties confronting the defendant city. But it was an arrangement which, if adopted generally, would discourage and prevent capable persons from seeking public office. Any plan, arrangement, or practice which has that tendency is violative of our public policy and is void. The law looks to the tendency of such practices. As said in an able opinion by Justice Salinger, in Dodson v. McCurnin, supra, 178 Iowa 1211, 1229, 160 N. W. 927, 934, L. R. A. 1917C, 1084, "* * * the agreement to pay less makes possible that desirables will not be available and that incompetents will serve." The same thought is expressed in Miller v. United States, 2 Cir., N. Y., 103 F. 413, 415.

The opinion in Glaser v. City of Burlington, supra, does not hold and it was not intended to hold that the court was departing from the wholesome rule followed by it and the courts

generally that public offices, unlike public contracts, are not to be let to the lowest bidder.

We are in nowise intimating that the plaintiff was not an efficient and worthy officer or that she and the council of the defendant city had any wrongful intention or ulterior or unworthy purpose, but we are stressing the fact that the tendency of what was done is bad.

Neither the defense of waiver nor of estoppel is available to the defendant when the conduct of the plaintiff and of itself, on which it relies to establish these defenses, is contrary to public policy.

The plaintiff performed the services of the office and is entitled to payment in full of her salary as fixed by statute.

The order of the trial court is—Affirmed.

GARFIELD, C. J., and HALE, MANTZ, MULRONEY, OLIVER, and WENNERSTRUM, JJ., concur.