Schwarz, Appellant, *v.* Philadelphia.
Swift, Admr., *v.* Philadelphia, Appellant.
Hanley, Appellant, *v.* Philadelphia.
Zinger, Appellant, *v.* Philadelphia.
Hauber *v.* Philadelphia, Appellant.
Dorman *v.* Philadelphia, Appellant.

546

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker and Rhodes, JJ.

*John P. Connelly,* with him *Hugh P. Connolly,* for appellants' Schwarz and Hanley, (Nos. 270 and 271).

*Frank Streeper,* with him *Romain C. Hassrick,* for appellant, Zinger, (No. 139).

*Ralph B. Umsted,* with him *Abraham Nathanson* and *John R. Umsted,* for appellee, Swift, (No. 253).

*Louis F. Floge,* with him *John Y. Mace* and *Schnader & Lewis,* for appellees, Hauber and Dorman, (Nos. 16 and 17).

*Abraham Shapiro* and *Samuel Feldman,* Assistant City Solicitors, with them *Abraham Wernick,* Assistant City Solicitor and *Joseph Sharfsin,* City Solicitor, for appellant, City of Philadelphia, (Nos. 253, 16 and 17), appellee, (Nos. 270, 271 and 139).

OPINION BY KELLER, P. J., March 3, 1939:

These six appeals grow out of two ordinances of the City of Philadelphia, (December 31, 1931 and January 16, 1933), adopting a financial program for the City for the years 1932 and 1933, respectively, which were considered by us in *Taylor v. Phila.,* 126 Pa. Superior Ct. 196, 190 A. 663, (affirmed in 328 Pa. 383, 196 A. 64), and *Patton v. Phila.,* 126 Pa. Superior Ct. 212, 190 A. 670. They reduced the wages or salaries of "all ...... employees of the city, county or other department, paid by appropriation from this financial program," and receiving more than $1200 per annum, in the amount of ten per centum, for the year 1932, and "of employees of the city, county and other departments or agencies paid by appropriation from this financial program" in the amount of twenty-three per centum (subject to an exemption of $600), for the year 1933.

The material provisions of the ordinances and the forms of the payrolls used by the city, showing the 'monthly rate,' the per centum deducted, and the 'amount payable' are set forth in detail in the opinion in *Taylor v. Phila.,* supra, and need not be recited here at length.

We held in the cases cited above that neither ap-

pointed [1] nor elected [2] public officers, whose salaries were fixed by Act of the General Assembly, but made payable by the City of Philadelphia, were employees of the City or County of Philadelphia affected by said ordinances; and that their salary or compensation could not be diminished by city council.

We held, however, that there was no public policy of the Commonwealth which prevents a public officer, whose salary is payable by the city, from voluntarily donating to the city, in times of public distress, such part of his salary or emoluments of office as he sees fit to give up for the relief of the city, provided it is clearly and unequivocally established to be his voluntary act, and is to continue only so long as he wishes. We said, inter alia, "No *contract* relative to the execution or continuance of such a gift or donation can be enforced. It must be wholly voluntary and remain so. It does not arise by waiver or estoppel ...... *The mere receipt of part of what he was legally entitled to, without more, was not enough to establish his voluntary acceptance of the part for the whole, especially so where, as here, it was not received as in full payment* (differing from *DeBoest v. Gambell,* 35 Ore. 368, 58 P. 72, 75 and 353, cited by appellant) but, on the contrary, the appellee disavowed and dissented from the right of the city to make the reduction. *The appellee was not bound to express his dissent and disavowal to the city, in order to make the latter's action ineffective.* The shoe was on the other foot. *The city,* in order to escape paying the plaintiff his full salary, *was required to show some clear and unequivocal act by him evidencing his voluntary donation* of the unpaid part of it to the city." Accordingly, we held that the mere signing by the public officer of the payroll prepared for his department, from which had been deducted ten per centum or twenty-

---

[1] *Taylor v. Phila.,* supra.

[2] *Patton v. Phila.,* supra.

three per centum of his salary, pursuant to the ordinance, did not amount to any proof of a voluntary donation by him to the city of the unpaid part of his salary, nor prevent his subsequent recovery of the amount withheld by action at law.

Counsel for the city contend that our definite ruling in that case should be disregarded because in distinguishing it from the case of *Taskey v. Pittsburgh,* 123 Pa. Superior Ct. 573, 575, 187 A. 292, (RHODES, J.) we said: "Nor is it at all similar to *Taskey v. Pittsburgh,* 123 Pa. Superior Ct. 573, 187 A. 292, where a city, which had power to suspend patrolmen, without pay, for periods not exceeding thirty days, in order to avoid the necessity of dismissing a number of patrolmen because of shortage of funds, ordered all of them to be placed on furlough, without pay, for certain days in certain months, and a patrolman who chose to work on the furlough days, although he was not obliged to do so, understanding fully that he would receive no compensation for such work, and who signed the payroll receipts for the days for which he was furloughed, and although not paid for those days, *acknowledged receipt of his wages in full,* and signed a statement that he was contributing such services to the city during the existing emergency, was not allowed, two years after he was placed on the retired list, to recover compensation for the furloughed days."

They point out that the paper books in the Taskey case show that the payroll receipt signed by Taskey read:

"$101.61 Received from H. W. Minnemeyer, Jr., City Paymaster, due to me from the City of Pittsburgh, for services rendered during period ending October 15, 1931. (signed) M. J. Taskey."

They argue that this requires us to hold that the payroll receipts under consideration in the Philadelphia cases were receipts in full, although we held exactly

the contrary in the Taylor and Patton cases. The circumstances in the Taskey case as set forth in Judge RHODES' opinion and briefly referred to by us in the Taylor case show that Taskey had been paid in full for all the wages he was entitled to receive. If the language used with reference to the receipt, in that case was too broad, we now correct it. We adhere to our ruling in the Taylor and Patton cases that the payroll receipts signed in those cases did not amount to receipts in full; that the mere fact that a *public officer,* whose salary is fixed by statute and is not subject to be decreased or diminished by the city, signs a form endorsed on a city payroll authorizing and empowering the designated paymaster to collect from the City Controller the amount stated opposite his name as 'Amount payable'—which amount was arrived at by deducting 10%, or 23%, from the salary legally payable to him—without more, amounts to no proof of a voluntary donation by him to the city of the amount deducted. Nor is such voluntary donation established by the additional fact that in some cases, on payment to him by the designated paymaster, he may have signed a payroll receipt for the files of the department, acknowledging the receipt from the paymaster of the money set opposite his name, "in the column, TOTAL AMOUNT PAYABLE, the same being for services during the period stated upon this payroll." That is not a receipt *in full of all salary due,* nor does it amount to a clear and unequivocal act evidencing the officer's voluntary donation of the unpaid part of his salary to the city. It is entirely consistent with an intention to stand upon his legal rights and enforce payment of the salary legally payable to him.

In the Patton case we referred to certain acts done by the magistrates, which might be construed by a jury, or a judge sitting without a jury, as showing an intent by individual magistrates to make a voluntary donation of part of their salaries to the city, but the general

principles laid down in the Taylor case were followed and approved.

These principles, and others set forth fully in the Taylor and Patton cases, which it is not necessary to refer to in detail now, will govern such of these six cases as are concerned with *public officers,* whose salaries are fixed by Act of Assembly, and directed to be paid by the city. As to the rest, in so far as the principles announced in those cases and in *Werkman v. Westmoreland County,* 128 Pa. Superior Ct. 297, 194 A. 344, and in the discussion of the authorities cited in the three cases, are relevant and can be applied, they will be applied, as we take up for consideration the individual cases. The case of *Vander Burgh v. Bergen County,* 200 A. 561, 120 N. J. L. 444, cited by the city, is so different on its facts that it is of no help to us.

## THE SCHWARZ CASE—APPEAL NO. 270.

This case is ruled by the Taylor case in favor of the appellant. He was duly elected coroner of the County of Philadelphia for a term of four years ending the first Monday in January, 1934. His salary was fixed at $8000 per annum by the Act of June 1, 1911, P. L. 556, to be paid by the county, which as respects Philadelphia County, where the county and city are coterminous, puts the responsibility for payment on the city. See *Graham v. Phila.,* 288 Pa. 152, 157, 135 A. 908; *Patton v. Phila.,* supra, p. 215. He was therefore not an employee of the city, affected by these ordinances, but a public officer whose salary, fixed by Act of Assembly, could not be diminished by city council.

While as above pointed out, it was within the power of the appellant voluntarily to donate to the city such part of his salary as he saw fit to do so, unless such donation was clearly established by the city, he was entitled to recover any moneys withheld from his salary in reliance upon said ordinances, for they did not apply

to him. We distinctly ruled in the Taylor and Patton cases that the burden resting on the city of showing such voluntary donation is not sustained by evidence that the officer signed his name to the semi-monthly payrolls from which the percentage fixed by the ordinances had been deducted, or to the letter of attorney, referred to on the payroll, authorizing the bonded paymaster for the department to receive the salary payable to the officer and the employees in the department and sign their names to the payroll, where the payroll does not clearly and unequivocally state that the amount so received is accepted *in full* of the amount due. Nor does the fact that the payrolls were approved by plaintiff, as the head of the department, amount to the required clear and unequivocal evidence of a voluntary donation by him of the part of his salary deducted. It was well known that the controller had been directed not to countersign any payrolls unless a deduction was made in accordance with the ordinance, and plaintiff's refusal to approve the payroll would have held up the salary of every employee in the department, even those whose salary was subject to deduction, or deprived himself of all salary for the year. The payrolls had been *approved* in like manner in the Taylor case.

With no other evidence than this of a voluntary donation by this appellant, the trial judge found in favor of the city. The finding and the judgment entered upon it were contrary to our decisions in the Taylor and Patton cases, and must be reversed, for the finding is without any proper basis of support in the evidence. Furthermore, the uncontradicted evidence of the appellant was that he appeared before the Finance Committee of Council both in 1931 and 1933 to defend his budget demands for the years 1932 and 1933, and that on both occasions, he definitely told the Finance Committee that he would not agree to any reduction in his salary; and that he never receded from this position.

However, in the circumstances, interest should not run until a clear demand for payment was made: *Koch v. Schuylkill Co.*, 12 Pa. Superior Ct. 567; *Linsky v. County of Luzerne*, 101 Pa. Superior Ct. 42, 48.

The judgment is reversed and the record is remitted to the court below with directions to enter judgment for the plaintiff for the unpaid portion of his salary with interest from the date of bringing suit.

## THE SWIFT CASE—APPEAL NO. 253.

This case was tried before a jury and resulted in a directed verdict for the plaintiff. It is governed in principle by the Taylor and Patton cases.

The plaintiff's decedent held the office of real estate assessor in the County of Philadelphia from May 8, 1918 to December 31, 1935, having been appointed by the Board of Revision of Taxes. His salary was fixed by the Act of May 7, 1927, P. L. 857, at $5000 per annum, "payable as provided by law for payment of salaries of officers and employees in said counties [of the first class]." A real estate assessor is not an employee of the city or county, but an appointed public officer *(Richie v. Phila.*, 225 Pa. 511, 74 A. 430) whose salary is fixed by statute and could not lawfully be reduced or diminished by city councils. Hence he was not affected by the passage of the ordinances, and was entitled to receive the full salary fixed by law, except in so far as the city proved, by clear and definite evidence, an unequivocal, voluntary donation by him to the city of any part of it.

On the trial of this case no evidence of any such voluntary donation was produced. The court rightly held, following our opinions in the Taylor and Patton cases, that the signing by him of the payrolls, which showed the 'amount payable' after the deduction of the percentages fixed in the ordinances above referred to,

or the authorization by him of some one in the department covered by the payroll to sign his name to such payroll, did not amount to a voluntary donation of the portion of his salary not paid him, since the payroll did not purport to be in full payment of the salary due him for the period, and amounted to nothing more than a receipt for the money paid him by the city.

Judgment affirmed.

## THE HANLEY CASE—APPEAL NO. 271.

This case was tried after the Swift case, before a judge without a jury. It resulted in a finding in favor of the plaintiff for $259.17 admitted by the city to be due for salary payable on December 1, 1932 and December 15, 1932, with interest from the date of demand for the same, but against the plaintiff as to any further amount. The trial judge specifically found that the difference between the salary fixed by statute and that received had been voluntarily donated by the appellant, with the exception of that portion of the salary payable December 15, 1932. Judgment was duly entered on the finding. Plaintiff appealed.

This appellant was a real estate assessor, the same as Swift. The court below was therefore in error in saying that the ordinances of December 31, 1931, (sec. 31) and January 16, 1933, (sec. 31), *applied* to his salary. They did not. The ordinances were limited to *"employees* of the City, County or other departments paid by appropriation from this Financial Program" (Ordinance of 1931) or "employees receiving a salary, wage, or other compensation" from the City of Philadelphia (Ordinance of 1933). The case differs from the Swift case in that the city on this trial produced some evidence tending to show a voluntary donation by the appellant to the city of the ten per centum withheld by the city in its semi-monthly payrolls during the year 1932. There was testimony that the plaintiff and

thirty-two other real estate assessors, whose actions were tried and decided at the same time, met on November 25, 1931, and adopted a resolution authorizing the Board of Revision of Taxes to notify City Council that they agreed to a voluntary reduction of ten per centum of their salaries, for the year 1932, provided that all other elective and appointive officials in City and County departments receiving similar or greater salaries agreed to do the same. The minutes did not show any dissenting votes.

The trial judge based his finding in favor of the city on the effect to be given the signing by the plaintiff of the semi-monthly payrolls and held that in the form presented in this case they amounted to evidence of a voluntary donation by him of the portion of his salary deducted. At that time he gave no probative effect to the resolution of the assessors of November 25, 1931. If he had stopped there we would be obliged to reverse the judgment in its entirety, for lack of evidence to support it; for we have already stated that the Taylor and Patton cases ruled squarely that the acceptance of a part of the salary the public officer was legally entitled to, and his signing of a payroll showing his receipt of the amount payable after deducting the percentage fixed by the city ordinance to be deducted from the wages, salaries, etc. of city and county employees, was not sufficient to establish his acceptance of the part for the whole and his voluntary donation to the city of the amount deducted. While in the Taylor case, the registration commissioners had expressly disavowed their acceptance of the reduction of their salaries, we held that even without such disavowal the signing of the payrolls was not proof of such voluntary donation of the part not paid. We said the officer was not bound to express his dissent to the city, in order to make the latter's action ineffective as to him; that the city was required to show some clear and unequivocal act by him evidencing his voluntary donation of the unpaid portion

of his salary to the city, and that signing the payroll, did not amount to such clear and unequivocal act. And in the Patton case, where there was no dissent noted on the payrolls as in the Taylor case, and the payrolls were regularly signed by the magistrate for the 'amount payable' after deducting the percentage fixed by the ordinance, we held that such signing was not evidence of a voluntary donation of the salary unpaid. But in passing upon the exceptions to the finding the trial judge ruled differently, and said: "What we said in our earlier opinion, we would repeat now. In one respect, only, is it now to be taken as modified. We there said that the resolution of the assessors' association of November 25, 1931 was inconclusive and of little materiality. Upon reconsideration, we think that the resolution, although conditional, did show a general intention on the part of plaintiff to 'go along' with the city and not to insist upon his strict statutory right to his full salary. The condition attached to the resolution was later withdrawn by plaintiff when he receipted, without protest or reservation, for the reduced salary as the total amount payable to him. The receipts, therefore, do not stand entirely alone, but are buttressed by the evidence of an intent, originally conditional but later absolute, to make a donation to the city."

We think this finding, in connection with the signing by the appellant of the payrolls without protest or reservation, supports the judgment for the city as to salary covered by the resolution, to wit, ten per centum deducted for the year 1932; but it cannot be extended by implication to cover the year 1933.

The judgment will accordingly be modified by increasing the judgment in favor of the appellant by the amount withheld from his salary in 1933 to wit, $1012.16 (see p. 62a) and interest from the date of bringing suit.

The same judgment will be entered in the other Registry Assessor cases, which, under the stipulation of

counsel, are to be disposed of in accordance with the decision of this appeal. See pp. 79a-85a.

## THE ZINGER CASE—APPEAL NO. 139.

This case was tried before a judge and a jury. A verdict was directed for the defendant on which judgment was entered, after refusal of plaintiff's motions for a new trial and for judgment non obstante veredicto. The plaintiff appealed.

This appellant was a tipstaff in the municipal court. He was an employee of that court, not a public officer. *(Werkman v. Westmoreland County,* supra). His salary, differing from the Werkman case, supra, was not fixed by Act of Assembly, but by action of the municipal court. The court could dismiss or discharge him at will and could increase or decrease his salary, effective from the date of such action.

The appellant admitted on the trial his willingness to accept a ten per centum cut, but objected to any deduction greater than that percentage.

On December 16, 1932, at a meeting of the Board of Judges of the Municipal Court the following action was taken, as appears from the minutes of said meeting: "The President Judge called the attention of the Board of Judges to the result of a conference with the Members of Council pertaining to the Budget for 1933. After many of the Judges were heard on behalf of the report, it was moved by Hon. VIVIAN FRANK GABLE, seconded by Hon. UTLEY E. CRANE, that 'the budget, as submitted by the President Judge on behalf of the Board of Judges to the Council and the Mayor, be approved; that after the amount appropriated be definitely ascertained, the Board of Judges adjust the salaries of the employees to compare and comply therewith.' "

Following this, semi-monthly payrolls were prepared, which were approved by the President Judge of the

Court—whose salary was not payable by the City of Philadelphia but by the Commonwealth—which showed a deduction of twenty-three per centum from the salary schedule fixed by the Board of Judges for the year 1933 in accordance with the ordinance reducing the salaries of city and county and departmental employees, as aforesaid. These payments were accepted by plaintiff without objection or protest. Had he objected or protested at the deduction, he could have been dismissed or discharged instanter by the court.

We construe the resolution of the Board of Judges, when considered in connection with the approval by the President Judge of the payrolls from which deductions from the salary schedule fixed by the court had been made pursuant to ordinance as aforesaid, as authorizing and directing the temporary adjustment of the salaries of the court employees to conform with the amounts to be fixed and appropriated by city council, rather than a mere expression of an intention to take future action in conformity therewith.

Judgment affirmed.

## THE HAUBER & DORMAN CASES—APPEALS NO. 16 & 17.

These cases were tried together in the municipal court by a judge without a jury. A finding was entered in each case for $223.26 on which judgment was entered. The city appealed. The appeals were argued together as they are identical.

The plaintiffs were not public officers. They were second grade prison guards, employed by the Board of Inspectors of Philadelphia County Prison. Under the existing law the Board of Inspectors aforesaid has the power to fix the salaries of persons employed in the prisons, and the city council is required to appropriate

the money. If not appropriated, it may nevertheless be recovered in an action against the city: *Graham v. Phila.*, 288 Pa. 152, 135 A. 908, affirming 88 Pa. Superior Ct. 250. City Council was, therefore, without authority to decrease the salary of prison guards, unless the action was concurred in by the Board of Inspectors. This was, apparently, recognized by City Council in the ordinance of December 31, 1931 adopting a financial program for 1932, for prison guards (second grade) were specifically excluded from the provisions of section 31, providing for a deduction of ten per centum from the wages or salary of city, county and departmental employees.

The evidence justifies a finding that the salary for second grade prison guards was fixed by the Board of Inspectors at $1700 a year. The appropriation of city council recognized this, and the deduction for the pension fund was based on that figure.

The plaintiffs received their full salary for the year 1932 until the month of October, 1932, when by reason of a shortage of money in the city treasury, a deduction of $20.54 was made from their semi-monthly salary so that instead of receiving a monthly payment of $141.66 (less pension fund 4%), they received only $94.92 (less pension fund 4% on $1700 basis). In this way they received $140.22 less than their salary. However, they made no protest and signed the payroll which contained the notation, just above their signatures: "Received of the bonded employee of the County Prison the amount set forth opposite my name being in full for wages due me by the Philadelphia County Prison." Differing from the payrolls in the other cases, this was a receipt in full. See, as to its effect, *Werkman v. Westmoreland County*, supra, and the cases therein cited. There is no evidence in the case that the Board of Inspectors raised any objection to this being done. On the contrary there is some evidence tending to show their acquiescence in

the deduction, which was equivalent to 8¼% of the yearly salary (63a-64a).

The ordinance of January 16, 1933, adopting a financial program for 1933, reduced the salaries of all "employees of the city, county and other departments or agencies paid by appropriation from this financial program for the year 1933" by twenty-three per centum after allowing an exemption of $600 per annum. Prison guards were not specifically excluded from the operation of this ordinance, and evidently steps were taken to induce the Board of Inspectors to conform to it. The evidence justifies a finding that the Board agreed to a reduction for the year 1933 of ten per centum, but refused to adopt or approve a reduction of twenty-three per centum.

The payrolls, however, were made out on the basis of a twenty-three per centum cut and contained the notation above, acknowledging the payment to be in full for wages due. Following the action of the Board as above, plaintiffs, while signing in the form above stated, entered the following protest or reservation on each payroll so signed by them: "Employees listed above have signed the within payroll, have done so without prejudice to and without waiving their rights to receive the salaries due them at the rate fixed by resolution of the Board of Prison Inspectors on January 19, 1933, [that is, allowing a deduction of 10% from the basic salary rate] and protest that the amount payable to them, as appearing on said payroll, is 23 per cent less than the amount to which they are entitled' by reason of the fact that no sufficient appropriation has been made by Council of the City of Philadelphia for their salaries as fixed by the said Board of Prison Inspectors."

This protest was placed on the payroll in accordance with a resolution of the Board of Prison Inspectors.

The excess withheld from each plaintiff over and above

564

the ten per centum deduction authorized by the Board was $83.04. We are of opinion that the protest endorsed on the payrolls was sufficient to toll any possible acquiescence that might be implied from signing the payrolls in the form in which it was prepared, and that the plaintiffs were entitled to a finding and judgment in their favor for that amount, with interest from the date of bringing suit. As to the balance of the plaintiffs' claims we think they are concluded by the form of their receipt in full, given without protest or reservation.

The judgment in each appeal is modified by reducing it to $83.04 with interest from January 22, 1935, to November 26, 1937, or $97.21 as of November 26, 1937.

## SUMMARY

Appeal No. 270 (Schwarz Case), judgment reversed, with directions to enter judgment for plaintiff for the unpaid portion of his salary, with interest from March 22, 1937.

Appeal No. 253 (Swift Case), judgment affirmed.

Appeal No. 271 (Hanley et al. Cases) judgment modified by increasing judgment in favor of plaintiff (appellant) by the amount withheld from his salary in 1933, and interest from March 17, 1937.

Appeal No. 139 (Zinger Case) judgment affirmed.

Appeals No. 16 and 17 (Hauber and Dorman Cases) judgment in each case modified by reducing it to $97.21 as of November 26, 1937.